UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN CLAY ALLEN,

              Plaintiff,               Case No. 2:19-cv-10518
                                               District Judge Nancy G. Edmunds
v.                                   Magistrate Judge Anthony P. Patti

JAMES CUDDIE and
GLADWIN COUNTY
SHERIFF'S DEPARTMENT,

              Defendants.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 20)

**I.**    **RECOMMENDATION**:  The Court should **GRANT** Defendants' motion for summary judgment (ECF No. 20) and, with no remaining defendants, dismiss the case.

**II.**    **REPORT**

    **A.**    **Background**

        **1.**    **Factual Background**

        On July 26, 2016, Plaintiff Justin Clay Allen contacted Defendant Detective/Sergeant James Cuddie of Defendant Gladwin County Sheriff's Department to speak about the death of a man named Allan Tuck.  (Gladwin County Sheriff's Dept. Investigation Report, Exhibit A, ECF No. 20-2,

PageID.99.)[1]  The two met at the station that day, with Plaintiff arriving in his 1993

Dodge pickup truck.  (Plaintiff's July 25, 2019 Deposition Transcript, Exhibit B,

ECF No. 20-3, PageID.200-204.)  According to the investigation report by which

Defendant Cuddie documented the conversation, Plaintiff admitted to using and

cooking methamphetamines (meth) and explained that he had requested the

meeting to deny any responsibility for Tuck's death, as Tuck had died in the house

of a woman named Amanda Rulapaugh, where Plaintiff had recently cooked meth.

(Exhibit A, ECF No. 20-2, PageID.99-100.)  Plaintiff was then arrested pursuant to

an outstanding warrant from April 2016, related to possession of a straw with trace

amounts of meth.  (Exhibit A, ECF No. 20-2, PageID.100; Exhibit B, ECF No. 20-

3, PageID.150-152; Plaintiff's Complaint, Exhibit C, ECF No. 20-4, PageID.210,

¶¶ 8-12.)

Defendant Cuddie interviewed Amanda Rulapaugh the next day – July 27,

2016.  (Exhibit A, ECF No. 20-2, PageID.101.)  According to the associated

investigation report, while Defendant Cuddie walked Amanda Rulapaugh to the

"Sally Port" for her jail intake, she observed Plaintiff's truck still parked in the lot,

and told him she had seen Plaintiff use the truck to haul meth components.

---

[1] The documents cited throughout the factual background of this report are those
attached to Defendant's motion for summary judgment.  (ECF No. 20.)

(Exhibit A, ECF No. 20-2, PageID.103; Defendant Cuddie's Answers to Plaintiff's Interrogatories, Exhibit D, ECF No. 20-5, PageID.218-219.)

The truck was seized, after which Defendant Cuddie made contact with Plaintiff in the video arraignment room of the jail and explained to Plaintiff that the truck was being forfeited based on allegations it had been used to transport meth, in response to which Plaintiff asserted there had never been any drugs in the truck. (Exhibit A, ECF No. 20-2, PageID.103.)  Plaintiff has testified that they spoke about the truck on August 5, 2016.  (Exhibit B, ECF No. 20-3, PageID.188-191.) In his interrogatory answers, Cuddie states that during this conversation, he attempted to personally serve Plaintiff the forfeiture papers in accordance with relevant policy and procedure (*see* Gladwin County Sheriff's Dept. Policy RE: Seizure and Forfeiture of Property Involved in Drug Violations, Exhibit E, ECF No. 20-6), but that Plaintiff refused the paperwork and walked out of the room, prompting him to place it in Plaintiff's inmate property file.  (Exhibit D, ECF No. 20-5, PageID.219-221.)  A search of the truck revealed tools and sex toys. (Exhibit D, ECF No. 20-5, PageID.219.)

At his deposition, Plaintiff admitted that Defendant Cuddie told him the truck was being taken and forfeited, and that he got mad and left as a result, but testified that Defendant Cuddie never mentioned paperwork, or tried to hand him anything.  (Exhibit B, ECF No. 20-3, PageID.145-146, 185-188.)  Further, Plaintiff

testified: "He's supposed to give me paperwork so I can read it.  I didn't know I had 21 days to file."  (Exhibit B, ECF No. 20-3, PageID.188.)

Proceeding *in pro per* and while incarcerated at G. Robert Cotton in Jackson, Michigan (ECF No. 1, PageID.1), Plaintiff filed the instant lawsuit on February 20, 2019 under 42 U.S.C. § 1983 against Defendants Cuddie and the Gladwin County Sheriff's Department (ECF No. 1, PageID.1-2, ¶¶ 1-4).[2]  Plaintiff alleges that Defendants seized and forfeited his truck, a search of which revealed no evidence of drugs or contraband, without probable cause for forfeiture and without serving proper written notice of the forfeiture as required by the Michigan Controlled Substances Act (CSA), Mich. Comp. Laws (M.C.L.) § 333.7521, thereby preventing him from claiming an interest in the truck in writing within the 20 days prescribed by the CSA, M.C.L. § 333.7523(c).  (ECF No. 1, PageID.3-4, ¶¶ 13-14, 18-22.)  Further, he asserts that the controlled substance offenses he was charged with were ultimately dismissed.  (ECF No. 1, PageID.4, ¶ 4.)

On the basis of these facts, Plaintiff claims that: (1) "[a]s applied . . . the CSA violates the Substantive and Procedural Due Process Guarantees of the Fourteenth Amendment because the Statute does not provide an adequate

---

[2] Plaintiff's complaint states, "I Justin C Allen, declare under 28 U.S.C. 1746, that I have read the above facts, and they are true and correct to the best of my knowledge, information, and belief" (ECF No. 1, PageID.7), but may not be considered an unsworn declaration because it does not use the term "under penalty of perjury" as required by 28 U.S.C. § 1746.

opportunity for indigent, or incarcerated claimants to make a claim for return of

property and further, Gladwin County Sheriff's Department impeded the process

by placing the notice in [his] property while he was incarcerated, and then

provided belated notice"; (2) Defendants violated his Fourth Amendment rights by

forfeiting his truck without probable cause to believe it was related to narcotics

activity as required by the CSA and by impeding his ability to make a timely claim

of interest for the truck; (3) Defendants abridged his right to appeal the forfeiture

under the CSA in violation of his First Amendment right to petition the

government; and (4) Defendants instituted policies, practices, and procedures

meant to circumvent notice and hearing safeguards and which run afoul of the

First, Fourth, and Fourteenth Amendments, including the Equal Protection Clause.

(ECF No. 1, PageID.5-6, ¶¶ 26-30.)  He requests declaratory and injunctive relief,

as well as nominal, compensatory, and punitive damages.  (ECF No. 1, PageID.6-

7.)[3]

### 2.   Instant Motion

On September 25, 2019, Defendants filed a motion for summary judgment

pursuant to Fed. R. Civ. P. 56(a), asserting that: (1) Defendant Gladwin County

---

[3] Although Plaintiff alleges that the truck at issue had been valued at $10,000 (ECF
No. 1, PageID.4, ¶ 15), he requests $100,000 in damages (ECF No. 1, PageID.7).
Defendants assert that "[t]he vehicle at issue was a 25-year-old rusty Dodge pickup
truck that could only be started with a screwdriver, and which was sold at auction
for $900."  (ECF No. 20, PageID.67.)

Sheriff's Department should be dismissed from the lawsuit because it is not an appropriate party; (2) Defendant Cuddie is entitled to qualified immunity from Plaintiff's First, Fourth, and Fourteenth Amendment claims because Plaintiff's clearly established rights have not been violated, nor was Defendant Cuddie's conduct unreasonable, as he had probable cause to seize the truck and attempted to serve Plaintiff the forfeiture notice; (3) Plaintiff's procedural due process claim should be dismissed because the Sixth Circuit has found that M.C.L. § 333.7523 affords citizens appropriate due process, and Plaintiff, "having rebuffed Defendant Cuddie's attempts to inform him of the process, having declined the necessary paper work, and having terminated the dialogue about the vehicle in a huff, cannot now claim that he was not afforded due process"; (4) Plaintiff has set forth no substantive due process claim; (5) Plaintiff's Fourth Amendment claim should be dismissed because Defendant Cuddie had probable cause for the forfeiture; (6) Plaintiff made no petition to invoke his First Amendment right to petition the government; (7) Plaintiff has not demonstrated that Defendant the Gladwin County Sheriff's Department maintained a policy designed to impede Plaintiff's participation in the forfeiture procedure; and (8) Plaintiff has no viable equal protection claim.  (ECF No. 20, PageID.66-70, 84-95.)

### B.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party "must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The

7

nonmovant must . . . do more than simply show that there is some metaphysical doubt as to the material facts[.] . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  In other words, summary judgment is appropriate when the motion "is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case . . . ."  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema, N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010);

*see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### C.   Discussion

#### 1.   Defendants' motion for summary judgment is unopposed

Defendants filed their motion for summary judgment on September 5, 2019. "A respondent opposing a motion must file a response, including a brief and supporting documents then available." E.D. Mich. Local Rule 7.1(c)(1). "A response to a dispositive motion must be filed within 21 days after service of the motion." E.D. Mich. LR 7.1(e)(1)(B). Therefore, Plaintiff's response would ordinarily have been due on or about September 26, 2019. Fed. R. Civ. P. 6(a) and (d).

On September 5, 2019, I entered an order which required Plaintiff to file a response on or before October 10, 2019, but extended the date for a response to November 4, 2019, after the Court was informed that the motion for summary judgment had been sent to the wrong address for Plaintiff. Neither of the Court's two orders regarding the briefing schedule (ECF Nos. 21 & 22) were returned to the Court as undeliverable, so it is presumed that they were received and that Plaintiff had repeated notice that the motion was pending against him. Further, in response to a text-only order from this Court, Defendants' counsel filed a

certificate of service on June 17, 2020, stating that a copy of Defendants' motion for summary judgment had been served on Plaintiff at the address provided to the Court via regular U.S. mail on September 10, 2019.  (ECF No. 23.)  To date, no response has been filed.  Thus, the motion is unopposed.

Nonetheless, "a district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded."  *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991).  "The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden."  *Carver*, 946 F.2d at 455.

### 2.    42 U.S.C. § 1983

Plaintiff's complaint is based on 42 U.S.C. § 1983.  (ECF No. 1, PageID.2, ¶ 6.)  "'Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law.'"  *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014) (quoting *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996)).  It does not, however, "permit individuals to sue state actors in the abstract; it requires them to connect alleged constitutional violations of the individuals' rights to state conduct."  *Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 614 (6th Cir. 2018).

Plaintiff alleges First, Fourth, and Fourteenth Amendment claims (ECF No. 1, PageID.5-6, ¶¶ 26-30), which I have interpreted through the lens of *Haines v. Kerner*, 404 U.S. 519, 520 (1972) ("[T]he allegations of the pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers[.]").  I have also kept in mind the Supreme Court's clarification that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."  *United States v. Lanier*, 520 U.S. 259, 272 n. 7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 393 (1989)).

### 3.    Controlled Substances Act

Defendants seized and forfeited Plaintiff's truck pursuant to the CSA.  (*See* Exhibit D, ECF No. 20-5, PageID.218-219; Exhibit E, ECF No. 20-6.)  Under M.C.L. § 333.7521 of the CSA, the following property is subject to forfeiture: property that is used or intended for use as a container for a controlled substance or drug, or for materials used in manufacturing or delivering a controlled substance or drug; and, with certain exceptions, "a conveyance, including an aircraft, vehicle, or vessel used or intended for use, to transport, or in any manner facilitate the

transportation, for the purposes of sale or receipt" of the items described above. M.C.L. § 333.7521(c) and (d).[4]

M.C.L. § 333.7522 governs the seizure of property subject to forfeiture, stating that such property may be seized upon process issued by the circuit court having jurisdiction over the property or, without process, if seized "incident to a lawful arrest" or because "[t]here is probable cause to believe that the property was used or is intended to be used in violation of this article . . . ."  M.C.L. § 333.7522(a) and (d).  Finally, in accordance with M.C.L. § 333.7523,[5] forfeiture proceedings for seized property must be instituted promptly.  M.C.L. § 333.7523(1).  If the property is seized without process and does not exceed $50,000, the unit of government that seized the property shall provide notification of the seizure and potential forfeiture by "delivering a written notice to the owner of the property or by sending the notice to the owner by certified mail."  M.C.L. § 333.7523(1)(a).  Any person claiming an interest in the property then has 20 days from receipt of the notice to file a written claim expressing interest in the property. M.C.L. § 333.7523(1)(c).

---

[4] M.C.L. § 333.7521a governs the conditions for forfeiture or disposition of seized property but was enacted well after the seizure and forfeiture at issue.

[5] This provision was amended in 2017 and 2019, after the seizure and forfeiture at issue.  Thus, I am applying the 2016 version.

### 4.    Defendant Cuddie is entitled to summary judgment of all claims against him on the basis of qualified immunity

In their summary judgment motion, Defendants assert that Defendant Cuddie is entitled to qualified immunity from Plaintiff's claims against him.[6] Section 1983 claims are subject to the affirmative defense of qualified immunity. *Regets*, 568 F. App'x at 386.  "Qualified immunity shields government officials performing discretionary functions 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Barton v. Martin*, No. 18-1614, 2020 WL 595981, at *4 (6th Cir. Feb. 7, 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 8181 (1982)).  "After a defending officer initially raises qualified immunity, the plaintiff bears the burden of showing that the officer is not entitled to qualified immunity."  *Barton*, 2020 WL 595981, at *4 (citing *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)).  "In the qualified immunity context, if the facts alleged and evidence produced, viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that the officer violated a clearly established constitutional right, dismissal by summary judgment is inappropriate."  *Barton*, 2020 WL 595981, at *3.

---

[6] I note that Defendants analyze Plaintiff's First, Fourth, and Fourteenth Amendment claims separately from their qualified immunity argument.  ECF No. 20, PageID.69-70, 88-95.)

Qualified immunity involves two steps. "First, viewing the facts in the light most favorable to the plaintiff, the court must determine whether the officer committed a constitutional violation." *Id*. at 4. "Second, if there is a constitutional violation, the court must determine whether that constitutional right was clearly established at the time of the incident." *Id*. "A right is clearly established when the 'contours of the right [are] sufficiently clear that a reasonable official would understand what he is doing violates that right.'" *Id*. (quoting *Morrison v. Bd. Of Trs. Of Green Twp.*, 583 F.3d 394, 400 (6th Cir. 2009)).

### a. Fourteenth Amendment Substantive and Procedural Due Process

The Fourteenth Amendment of the United States Constitution protects individuals from the deprivation "of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. The clause has both a substantive and a procedural component. Procedural due process is traditionally viewed as the requirement that the government provide a "fair procedure" when depriving someone of life, liberty, or property; substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harbor Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061, 117 L.Ed.2d 261 (1992) (internal quotation marks omitted); *see also Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992).

*EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

Plaintiff first alleges that, as applied, the CSA "violates the Substantive and Procedural Due Process Guarantees of the Fourteenth Amendment because the Statute does not provide an adequate opportunity for indigent, or incarcerated

14

claimants to make a claim for return of property . . . ."  (ECF No. 1, PageID.5 ¶

26.)  However, in *Langston v. Charter Twp. Of Redford*, 623 F. App'x 749, 759-60

(6th Cir. 2015), which will be cited throughout this report as Plaintiff relies upon

the unpublished opinion "to support his theory of an unconstitutional (as applied)

deployment of a State Statute that operates to violate [his] constitutional Rights

under the United States Constitution" (ECF No. 1, PageID.2-3, ¶ 7), the Sixth

Circuit rejected an identical argument.  And it appears that Plaintiff raises all the

same claims raised by the plaintiff in *Langston*.  There, the Sixth Circuit held that

indigence and incarceration, without more, are insufficient to establish a

procedural due process violation.  *Id*. at 759-60.  Further, it reasoned that "[t]he

mere recitation of the vague words 'substantive due process' in one's complaint –

without a word more of elaboration . . . is insufficient to preserve a claim on

appeal."  *Id*. at 758 (quoting *Rosedale Missionary Baptist Church v. New Orleans

City*, 641 F.3d 86, 90 (5th Cir. 2011)).  And Plaintiff does no more here than claim

a substantive due process violation, without elaborating or defining that violation.

Nor is an alleged right to reclaim property subject to forfeiture as a result of

potential criminal action a fundamental right or interest, the burden of which is

subject to strict scrutiny.  *See Langston*, 623 F. App'x at 759. As the Sixth Circuit

explains, "[T]he list of fundamental interests is short and includes: the right to

marry, to have children, to direct the education and upbringing of one's children, to

15

marital privacy, to use contraception, to bodily integrity, to terminate one's

pregnancy, and possibly the right to refuse unwanted lifesaving medical

treatment." *Id*.

Plaintiff's due process claims against Defendant Cuddie related specifically

to his actions fare no better.  Plaintiff claims that the acts and omissions described

in his complaint violate the substantive and/or procedural due process guarantees

of the Fourteenth Amendment (ECF No. 1, PageID.6, ¶ 27), stating further that the

"Gladwin County Sheriff's Department impeded the process by placing the notice

in Plaintiff's property while he was incarcerated, and then provided belated notice"

(ECF No. 1, PageID.5, ¶ 26).  In so doing, he alleges: (1) "Defendant Det/Sgt

James Cuddie noted that Plaintiff was uncooperative in the investigation

surrounding the Meth Lab Offense, (case no. 16--8645-FH), and after seizing

Plaintiff's truck from the court parking lot, totally failed to serve Plaintiff with a

notice of forfeiture of his truck, contrary to State Statutory Mandates"; (2)

"Defendant Det/Sgt James Cuddie admitted that because Plaintiff was

uncooperative the notice of forfeiture was placed in the Plaintiff's property stored

at the jail"; and (3) "[a]fter the belated notice and seizure, Plaintiff tried to have his

father get the truck back from the Defendants[,]" but "the Defendants told

Plaintiff's father he couldn't get the truck, and all he could do was retrieve all of

the Plaintiff's tools from the truck."  (ECF No. 1, PageID.4-5, ¶¶ 17, 19, 24.)

For the same reasons provided above, the Court should find that Defendant

Cuddie is entitled to qualified immunity from Plaintiff's substantive due process

claim, as Plaintiff has failed to show that he violated a clearly established

constitutional right. *See Barton*, 2020 WL 595981, at *3-4.  The Court should also

grant summary judgment of Plaintiff's procedural due process claim against

Defendant Cuddie.  To prove a claim of procedural due process, a plaintiff must

show that "(1) he had a life, liberty, or property interest protected by the Due

Process Clause; (2) he was deprived of this protected interest; and (3) the state did

not afford him adequate procedural rights prior to depriving him of the property

interest.'" *Langston*, 623 F. App'x at 749 (quoting *EJS Properties, LLC*, 698 F.3d

at 855.  "'Procedural due process generally requires that the state provide a person

with notice and an opportunity to be heard before depriving that person of a

property or liberty interest.'" *Langston*, 623 F. App'x at 758 (quoting *Warren v.*

*City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005)).  "When considering

whether notice complied with due process, the court considers whether the notice

is reasonably calculated, under all of the circumstances, to apprise interested

parties of the pendency of the action and afford[s] them an opportunity to present

their objections, and . . . afford[s] a reasonable time for those interested to make

their appearance." *Krueger v. City of Eastpointe*, No. 19-10596, 2020 WL

17

1676714, at *5 (E.D. Mich. Apr. 6, 2020), appeal filed (quotation marks and citations omitted).

Defendants assert that they gave Plaintiff adequate notice and an opportunity to be heard in accordance with M.C.L. § 333.7523(1)(a) and (c), because Defendant Cuddie informed Plaintiff of the seizure and forfeiture of his truck and attempted to personally serve him the written notice before he stormed off, prompting Defendant Cuddie to place the notice in Plaintiff's inmate property file. (ECF No. 20, PageID.90-91.)  The evidence and law both support this assertion.

Again, the CSA requires that the owner of property seized pursuant to the statute be delivered written notice, upon the receipt of which he has 20 days to claim an interest in the property.  M.C.L. § 333.7523(1)(a) and (c).  In his answers to Plaintiff's interrogatories, produced by Defendants in support of their motion for summary judgment, Defendant Cuddie states that he followed policy and procedure (*see* Exhibit E, ECF No. 20-6) by telling Plaintiff of the forfeiture and attempting to personally serve him the written notice, but that Plaintiff "refused personal service or to take the paperwork so the paperwork was placed . . . in [Plaintiff's] inmate property file."  (Exhibit D, ECF No. 20-5, PageID.220-221.) He indicated the same in his investigation report, stating that he made contact with Plaintiff in the video arraignment room of the jail and:

> explained to [Plaintiff] it was being alleged his truck was used to
> transport meth components.  [Plaintiff] indicated there had never been

drugs in the truck.  [Plaintiff] indicated any contraband would belong
to Amanda.  I told him his truck was being forfeited.  [Plaintiff]
became angry and walked out of the interview to his cell.  [Plaintiff]
would not talk to me any further at this point and his forfeiture papers
were placed in his property.

(Exhibit A, ECF No. 20-2, PageID.103.)

Thus, Defendants satisfied their burden of demonstrating no genuine issue of

material fact with regard to procedural due process.  The evidence establishes that

Defendant Cuddie complied with M.C.L. § 333.7523(1)(a) by telling Plaintiff of

the forfeiture and attempting to hand him written notice, and that such notice was

reasonably calculated to apprise Plaintiff of the forfeiture and provide him the

opportunity to object within the prescribed time.  *See Krueger*, 2020 WL 1676714,

at *5.  By failing to oppose the motion, Plaintiff has not disputed the evidence

presented by Defendants.  Fed. R. Civ. P. 56(e)(2).

I note that Defendants did attach to their summary judgment motion the

entirety of Plaintiff's deposition, in which Plaintiff disputed Defendant Cuddie's

account of the conversation.  Specifically, Plaintiff testified at the deposition that

Defendant Cuddie never attempted to hand him paperwork, or even indicated that

there was paperwork.  (Exhibit B, ECF No. 20-3, PageID.186-187, 190.)

However, even viewing the evidence in a light most favorable to Plaintiff, it fails

to establish a genuine issue of material fact with regard to his procedural due

process claim.  As stated recently by this Court in a case involving forfeiture under

the CSA:

> If an individual did not receive *procedurally* adequate notice but was
> notified *in fact* that the government intended to deprive the individual
> of property or a liberty interest, no claim under procedural due process
> will lie.  *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260,
> 272, 130 S. Ct. 1367, 176 L.Ed.2d 158 (2010) . . . .
>
>         \*   \*   \*
>
> Since an individual with actual notice would be given the opportunity
> to contest the government action at issue, she would not be able to
> demonstrate that a "substantially different outcome" would have
> resulted with proper notice, and thus would fail the prejudice
> requirement.

*Krueger*, 2020 WL 1676714, at \*7.

And the evidence produced by Defendants demonstrates that Plaintiff

received actual notice of the forfeiture of his truck.  Plaintiff testified at his

deposition that on August 6, 2016, Defendant Cuddie informed him the truck was

being taken and forfeited, and that he walked out on Defendant Cuddie in response.

(Exhibit B, ECF No. 20-3, PageID.186-190.)  Whether Cuddie attempted to hand

him the paper is immaterial to the question of notice here, as it is undisputed that

Plaintiff had *actual* notice, and having such notice, may not rely on ignorance of

the law as to his rights with respect to redemption.

Further, although Defendants do not address in their motion for summary

judgment Plaintiff's allegation that his father attempted to claim the truck, but was

refused (ECF No. 1, PageID.5, ¶ 24), the only evidence before the Court regarding this alleged attempt fails to demonstrate a genuine issue of material fact with regard to Plaintiff's procedural due process claim.  A limited review of Plaintiff's deposition reveals that Plaintiff testified that his father attempted to retrieve his truck, but that he did not do so until after the statutory period to make a claim had expired.  (Exhibit B, ECF No. 20-3, PageID.190-191.)[7]  Again, the deadlines established by the CSA are within the public realm, and lack of knowledge as to what they are is no excuse for failing to follow them.

Accordingly, no genuine issue of material fact exists regarding whether Defendant Cuddie afforded Plaintiff adequate procedural and substantive due process under the CSA, and Defendant Cuddie is entitled to qualified immunity from these claims.  *See Barton*, 2020 WL 595981, at *3.

## b.    Fourth Amendment

The Court should find that Defendant Cuddie is also entitled to qualified immunity from Plaintiff's Fourth Amendment claim.  Plaintiff claims that "Defendants violated his Fourth Amendment rights by forfeiting his property

---

[7] Specifically, when asked if anything happened between August 5, 2016, when he was informed the truck was taken, and October 2016, Plaintiff testified: "Tom Mercier tried getting my truck but was denied.  My dad didn't try getting it until afterwards."  (Exhibit B, ECF No. 20-3, PageID.190-191.)  Further, he testified that his father tried to get it within the first couple of months, but he does not say within the first 20 days, which is the time period prescribed by the CSA.  (Exhibit B, ECF No. 20-3, PageID.136.)

without probable cause to believe that it was related to narcotics activity as required by the CSA," and by "impeding an appeal of the seizure."  (ECF No. 1, PageID.5-6, ¶¶ 26, 28.)  In so doing, he alleges that the seized truck contained no contraband and was acquired from legitimate employment activities, and that all charges related to the allegations made by Amanda Townsend (Rulapaugh) were dismissed.  (ECF No. 1, PageID.3-5, ¶¶ 13-14, 16, 21-22.)

"The Fourth Amendment provides in relevant part that 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'"  *U.S. v. Jones*, 565 U.S. 400, 404 (2012) (quoting U.S. CONST amend. IV).  Like the plaintiff in *Langston*, 623 F. App'x at 760, Plaintiff here specifically challenges probable cause for the *forfeiture* of his truck, as distinct from the seizure.  (ECF No. 1, PageID.5-6, ¶¶ 26, 28.)  However, as this Court recently stated in summarizing the Sixth Circuit's *Langston* holding:

> [W]hile an individual may challenge the legality of the initial seizure of property, she may not recast the holding of property as a continued or recurring seizure.  [*Langston*, 623 F. App'x at 760-61] (finding that the State of Michigan's attempted forfeiture of a watch and money under the Controlled Substances Act when the plaintiff did not contest the legality of the initial seizure did not implicate the Fourth Amendment)[.]

*Krueger*, 2020 WL 1676714, at *3. Indeed, in *Langston*, 625 F. App'x at 761, the Sixth Circuit reasoned that because the plaintiff's property "was seized incident to his lawful arrest, it was not seized in violation of the Fourth Amendment."

Here, the evidence presented demonstrates that probable cause existed to seize Plaintiff's truck under the CSA. Again, under M.C.L. § 333.7521(d), a vehicle used or intended for use to transport or facilitate the transport of a controlled substance or equipment used to manufacture a controlled substance for the purposes of sale or receipt may be subject to forfeiture. And such property may be seized without process if the seizure is "incident to a lawful arrest" or if "[t]here is probable cause to believe that the property was used or is intended to be used in violation of this article . . . ." M.C.L. § 333.7522(a) and (d).

Defendants assert that ample probable cause existed to seize the truck because of Rulapaugh's statement that it had been used to transport and facilitate the production of meth, and because "the Plaintiff by his very own admission had meth paraphernalia on his person at the time of his arrest, and had been conveyed to the Sheriff's Department in the same vehicle." (ECF No. 20 PageID.87.) Defendants' argument regarding drug paraphernalia on Plaintiff's person at the time of his arrest misstates the record, as both the evidence presented as well Plaintiff's complaint indicate that he was arrested in July 2016 pursuant to a warrant from April 2016, and that it was in April 2016 that he was found to be in

possession of a straw with trace amounts of meth.  (ECF No. 1, PageID.3, ¶ 9; Exhibit B, ECF No. 20-3, PageID.151-152, 178-179.)  Nevertheless, the evidence demonstrates that seizure was warranted as probable cause existed at the time to believe that Plaintiff's truck was used or intended to be used to transport meth or equipment used to manufacture meth.  Plaintiff alleges in his complaint that he was arrested and charged with a number of controlled substance offenses (ECF No. 1, PageID.4, ¶ 14), and admitted at his deposition that on April 19, 2016, he was found to be in possession of a straw that had trace elements of meth (Exhibit B, ECF No. 20-3, PageID.151-152, 178-179).  And from Defendant Cuddie's investigation report, it seems that Plaintiff was arrested in July 2016 on the basis of an outstanding warrant related to the April 2016 possession.  Indeed, the report states: "[Plaintiff] had an outstanding warrant for his arrest for possession of methamphetamine and introduction of contraband into jail.  The warrant was out of Gladwin County with the original Deputy being Scott Close.  [Plaintiff] lodged in the Gladwin Jail without incident."  (Exhibit A, ECF No. 20-2, PageID.100; *see also* ECF No. 1, PageID.3, ¶ 12 ("During questioning about Alan Tuck, Det/Sgt James Cuddie informed Plaintiff that he had an outstanding warrant related to the straw found on his person on April 19, 2016 at the jail."))

Further, Defendant Cuddie stated in his investigation report and answers to Plaintiff's interrogatories that Plaintiff admitted to using and cooking meth, and

that Amanda Rulapaugh, while being taken to the jail intake, said she had seen

Plaintiff use the truck to haul meth components, including a meth lab.  (Exhibit A,

ECF No. 20-2, PageID.99, 102; Exhibit D, ECF No. 20-5, PageID.218-219.)

Consistent with this, Defendant Cuddie stated in his interrogatory answers that he

seized the truck "because pursuant to the investigation and testimony by Amanda

Rulapaugh, the 1993 truck owned by [Plaintiff] was used to transport meth

components relating to the meth lab . . . ."  (Exhibit D, ECF No. 20-5,

PageID.218.)

       This evidence clearly demonstrates that seizure was justified because

probable cause existed to believe that the truck was used to transport meth

manufacturing equipment for the purposes of sale or receipt.  *Childress v.*

*Michalke*, No. 10-CV-11008, 2014 WL 3819347, at *6 (E.D. Mich. Aug. 4, 2014)

(quoting *United States. v. Redmond,* 475 F. App'x 603, 607 (6th Cir.2012)

("'Probable cause exists when there is a fair probability that contraband or

evidence of a crime will be found in a particular place.'").   And, "a warrantless

seizure of an automobile is appropriate where there is probable cause to associate it

with criminal activity."  *Childress*, 2014 WL 3819347, at *6 (*citing*

*Autoworld Specialty Cars, Inc. v. United States*, 815 F.2d 385, 389 (6th Cir. 1987).

Accordingly, Plaintiff has failed to meet his burden of demonstrating that

Defendant Cuddie committed a violation of clearly established constitutional law,

*Barton*, 2020 WL 595981, at \*3, and the Court should conclude he is entitled to summary judgment on Plaintiff's Fourth Amendment claim.

### c.     First Amendment

Plaintiff's third claim is that Defendants impeded the notice and hearing process under the CSA in violation of his First Amendment right to petition the government for redress of grievances.  (ECF No. 1, PageID.5-6, ¶¶ 26, 29.)  In their summary judgment motion, Defendants argue that Plaintiff's First Amendment claim should not survive because Plaintiff made no actual petition. Rather, Plaintiff rejected the written notice offered, which contained information regarding making a claim for his truck, and only initiated suit three years after his truck was originally impounded.  (ECF No. 20, PageID.69-70, 95.)

"The First Amendment protects 'the right of the people . . . to petition the Government for a redress of grievances.'"  *EJS Properties, LLC*, 698 F.3d at 863 (quoting U.S. CONST. amend. I).  "'The threshold question in a right-to-petition case . . . is . . . whether the plaintiff's conduct deserves constitutional protection.'"  *EJS Properties, LLC*, 698 F.3d at 863 (citations omitted).

Although Plaintiff has not elaborated on the theory behind his First Amendment claim[8] because he has failed to file a response to Defendants' motion

---

[8] The plaintiff in *Langston* also raised a First Amendment claim, but the Sixth Circuit declined to address it because the plaintiff first raised the claim in his summary judgment motion.  *Langston*, 623 F. App'x at 759 n. 12.

for summary judgment, he appears to assert something akin to an access to court claim – alleging that Defendants violated his First Amendment right to petition the government by failing to properly notify him of the need to file a written claim for his truck within 20 days.  "[T]he right of access to courts for redress of wrongs is an aspect of the First Amendment right to petition the government." *Borough of Duryea, Pa v. Guarnieri*, 564 U.S. 379, 387 (2011) (quotation marks and citations omitted).  However, as discussed above, the evidence produced demonstrates that Defendants did not inhibit Plaintiff's access to the information necessary to file a timely written claim of interest in his truck.  Instead, the evidence establishes that Plaintiff had actual notice of the forfeiture even if, viewing the facts in a light most favorable to Plaintiff, he was never actually given the written notice.  (Exhibit A, ECF No. 20-2, PageID.220-221.)  Yet, rather than ask questions when informed of his truck's forfeiture, Plaintiff "got mad, flipped out and left" (Exhibit B, ECF No. 20-3, PageID.185-187), and did not file suit claiming improper seizure and forfeiture of his truck until over two-and-a-half years later.

Accordingly, no reasonable factfinder could conclude that Defendants violated Plaintiff's First Amendment right to petition, and Defendant Cuddie is entitled to judgment as a matter of law on this claim.

      **5.**      **Defendant the Gladwin County Sheriff's Department is not a proper party for suit; nor has Plaintiff demonstrated municipal liability**

First, the Court should conclude that Defendant the Gladwin County Sheriff's Department is entitled to summary judgment because, as Defendants assert (ECF No. 20, PageID.67-68, 84-85), a county sheriff's department is an agency of the county and, therefore, not a proper defendant in a § 1983 lawsuit. *See Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988) (finding that a sheriff is a constitutional officer and an individual; the sheriff's department does not exist); *Day v. Genesee Cty.*, No. 10-cv-14169, 2010 WL 4792382, at *5 (E.D. Mich. Nov. 18, 2010). Nevertheless, even if the Gladwin County Sheriff's Department could be considered the proper municipal party, as the county itself would have been, the Court should grant summary judgment of each of the claims against it.

Plaintiff claims that Defendants "have instituted the above described Procedures as a Policy, Practice, and Custom to circumvent Notice and Hearing rights, and violate the Equal Protection Clause of the Fourteenth Amendment." (ECF No. 1, PageID.6, ¶¶ 26, 30.) "To establish municipal liability, [a plaintiff] must: (1) identify a municipal policy or custom; (2) connect that policy or custom to the municipality; and (3) show that the execution of the policy or custom caused a constitutional injury." *Langston*, 623 F. App'x at 761. However, as discussed extensively above, Plaintiff has failed to demonstrate substantive or procedural due process, Fourth Amendment, or First Amendment violations. Nor has he set forth

a viable equal protection claim.  Under the Fourteenth Amendment Equal

Protection Clause, "all persons similarly situated should be treated alike." *EJS*

*Properties, LLC*, 698 F.3d at 864.  But Plaintiff does not argue or offer any

evidence that he is a member of a suspect class, that fundamental rights are at issue

here, or that he was treated differently from others similarly situated, *see id*. at 864-

865, and the Court need not make those arguments for him.  He also fails to plead

any facts in support of a custom or policy; indeed, the facts he did plead suggest a

situation which was unique to him.  Thus, as Plaintiff has failed to demonstrate that

he suffered any constitutional harm, he cannot establish any municipal liability in

this case, and the Court should conclude that Defendant the Gladwin County

Sheriff's Department is entitled to summary judgment on each of his claims.  *See*

*Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality

or county cannot be liable under § 1983 absent an underlying constitutional

violation by its officers.").

### D.   Conclusion

The Court should **GRANT** Defendants' motion for summary judgment

(ECF No. 20) and, with no remaining defendants, dismiss the case.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc*.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc*.  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  June 24, 2020                    s/*Anthony P. Patti*
                                         Anthony P. Patti
                                         UNITED STATES MAGISTRATE JUDGE

30

## **Certificate of Service**

I hereby certify that a copy of the foregoing document was sent to parties of record on June 24, 2020, electronically and/or by U.S. Mail.

s/Michael Williams
Case Manager for the
Honorable Anthony P. Patti

31